UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BERTHA MARIE KIRBY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:21 CV 395 DDN |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM

This action is before the Court for judicial review of the final decision of the defendant Commissioner of Social Security denying the applications of plaintiff Bertha Marie Kirby for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 and supplemental security income under Title XVI of the Act, 42 U.S.C. § 1381, *et seq*. The parties have consented to the exercise of plenary authority by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

For the reasons set forth below, the decision of the Commissioner is affirmed.

## I.  BACKGROUND

Plaintiff Bertha Marie Kirby, who was born on September 7, 1956, protectively filed her applications on June 13, 2019. (Tr. 121-28, 129-35.) She alleged a disability onset date of January 1, 2012, due to chronic obstructive pulmonary disease (COPD), emphysema, and chronic fatigue. (Tr. 70, 75.) Plaintiff's applications were denied initially

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Kilolo Kijakazi is substituted for Andrew Saul as defendant in this action. No further action is needed for this action to continue. See 42 U.S.C. § 405(g) (last sentence).

on August 30, 2019.  (Tr. 84-91.)  Plaintiff appealed the decision and requested a hearing by an administrative law judge (ALJ) on October 7, 2019.  (Tr. 92-93.)

On July 17, 2020, plaintiff attended a hearing before an ALJ.  (Tr. 50-69.)  On August 24, 2020, the ALJ denied plaintiff's applications.  (Tr. 7-21.)  The Appeals Council denied plaintiff's request for review on February 1, 2021.  (Tr. 1-4.)  The ALJ's decision therefore became the final decision of the Commissioner subject to judicial review by this Court under 42 U.S.C. § 405(g).

## II.  MEDICAL AND OTHER HISTORY

The following is a summary of plaintiff's medical and other history relevant to her appeal.

On January 17, 2011, plaintiff saw Edward Downey, D.O., for a chest x-ray.  The x-ray revealed left basilar atelectasis.[2]  (Tr. 222.)  The x-ray showed no evidence of pulmonary embolus,[3] but found subtle ground-glass opacities in the right upper lobe and possible minimal pneumonia.  (Tr. 223.)

On January 29, 2014, plaintiff went to the emergency department at Phelps County Regional Medical Center for chest pain.  (Tr. 229.)  Todd Riggs, D.O., set up a nuclear imaging stress test for plaintiff.  (Tr. 230.)  The stress test result was negative.  (Tr. 235.)

On January 30, 2014, plaintiff saw Timothy Martin, M.D., for a cardiovascular evaluation.  (Tr. 232.)  Dr. Martin ruled out a myocardial infarction.  (Tr. 234.)

On November 13, 2018, plaintiff saw nurse practitioner Elaine Briggs, FNP, for checkup for blood pressure medications and smoking cessation.  (Tr. 276.)  The examination showed that plaintiff's respiratory effort was unlabored "without accessory

---

[2] "Atelectasis" is a partial or complete collapse of area of the lung or the entire lung. https://www.mayoclinic.org/diseases-conditions/atelectasis/symptoms-causes/syc-20369684.

[3] "Pulmonary embolus" is a blockage of an artery in the lungs. https://medlineplus.gov/ency/article/000132.htm.

muscle use." (*Id.*) Plaintiff refused to take the cholesterol medication. (*Id.*) Ms. Briggs refilled Lisinopril for hypertension and stopped Lovastatin for high cholesterol. (*Id.*)

On May 18, 2019, plaintiff went to the emergency department at Phelps Health for COPD exacerbation. (Tr. 250.) Ghanem Abusbeih, M.D., prescribed Cefuroxime for bacterial infections, Combivent Respimat Inhalation Spray for COPD, and Medrol Dosepack for inflammation. (Tr. 250-57.)

On May 20, 2019, plaintiff saw Megan Made, P.A., for breathing problems. (Tr. 270.) Ms. Made counselled plaintiff on the dangers of tobacco use, urged her to quit smoking, and refilled Lisinopril. (*Id.*)

On June 3, 2019, plaintiff had a routine two-week follow-up with Ms. Made. (Tr. 272-73.)

On July 1, 2019, plaintiff saw Ms. Made for a follow-up on COPD. (Tr. 278.) Plaintiff said the inhalers had helped. (*Id.*) She also stated that she only used the inhalers when she really needed them. (*Id.*) Plaintiff said her lawyer needed lab work for her chronic fatigue to support her disability claim. (*Id.*) She reported that she was feeling good at her appointment. (Tr. 279.) Plaintiff was diagnosed with chronic fatigue and pulmonary emphysema, unspecified emphysema type. (*Id.*) The examination showed that plaintiff's respiratory effort was unlabored "without accessory muscle use." (*Id.*) Ms. Made asked plaintiff to continue using Bevespi inhalers. (Tr. 280.)

On August 1, 2019, plaintiff saw Gillian Brown, licensed clinical social worker, for a follow-up for depression. (Tr. 282.) Plaintiff was given coping strategies and community resources. (*Id.*)

On August 27, 2019, plaintiff saw Ms. Made for lower abdominal pain. (Tr. 284.) Ms. Made discussed different causes of abdominal pain with plaintiff, ordered laboratory tests, and prescribed Dicyclomine HCI for irritable bowel syndrome. (Tr. 284-86.)

On September 1, 2019, plaintiff went to the emergency department for abdominal pain. (Tr. 355.) She complained of gradual onset of 2.5 weeks of abdominal pain increasing in severity and a pressure stabbing type pain that radiated into the lower quadrant of her back. (Tr. 355-56.) The CT of plaintiff's abdomen and pelvis revealed

acute sigmoid diverticulitis, an infrarenal abdominal aortic aneurysm, multiple subcentimeter hepatic lesions, bilateral adrenal hyperplasia,[4] and lumbar spondylolysis. (Tr. 360.) Damian Baalmann, M.D., diagnosed plaintiff with diverticulitis of the large intestine with abscess without bleeding and unspecified type of leukocytosis. (*Id.*) A physical exam in September 2019 showed that plaintiff had normal and symmetric strength. (Tr. 374.) Plaintiff had drainage of midline abscess during her hospital stay. (Tr. 378.) Plaintiff was recommended to have an elective colonoscopy and a sigmoid colon resection. (Tr. 386.)

On November 4, 2019, plaintiff saw Jerad Miller, M.D., for a colonoscopy. (Tr. 356-28.) Dr. Miller found three semi-pedunculated polyps[5] in the rectum and removed the polyps. (Tr. 329.) The exam also found multiple diverticula in the sigmoid colon. (*Id.*) Dr. Miller recommended a repeat colonoscopy in three years to monitor multiple polyps. (Tr. 329-30.)

On November 5, 2019, plaintiff saw Jennifer Etling, M.D., for elective laparoscopic sigmoid colon resection. (Tr. 296.) The physical exam showed normal range of motion. (Tr. 295.)

On February 13, 2020, plaintiff saw Ms. Made for a checkup and medication refills. (Tr. 288.) Plaintiff had no complaints at that time. (*Id.*) She said she was then working as a dog groomer. (*Id.*) Plaintiff denied fatigue at the appointment. (Tr. 289.) Ms. Made refilled Lisinopril. (Tr. 288.)

**ALJ Hearing**

On July 17, 2020, plaintiff testified at a hearing before an ALJ. (Tr. 51-69.) She is divorced and has one adult child. (Tr. 56.) She lives alone. (Tr. 56-57.) Plaintiff is

---

[4] "Adrenal Hyperplasia" is a disorder that affects the adrenal glands. https://www.mayoclinic.org/diseases-conditions/congenital-adrenal-hyperplasia/symptoms-causes/syc-20355205.

[5] Semi-pendunculated polyps have a short stalk beneath them. https://accesssurgery.mhmedical.com/content.aspx?bookid=1515&sectionid=96937182.

working around four or five hours each day on Mondays and Tuesdays as a dog groomer. (Tr. 57.) She does not have health insurance. (*Id.*) She cannot work full time because she lacks energy and strength. (Tr. 60.) Her biggest problem is fatigue. (*Id.*) Plaintiff stated that she did not have any pain anymore. (Tr. 61.) She has arthritis which causes pain from time to time. (*Id.*) Her back and hands hurt if she uses her hands too much or lifts up a dog she should not lift. (*Id.*) She has carpal tunnel syndrome in both hands. (*Id.*) She takes aspirin that helps to relieve her symptoms. (*Id.*)

Plaintiff lives in an apartment building with other seniors. (Tr. 62.) She can go grocery shopping, make things, wash dishes, and clean the house. (*Id.*) She wears out while doing chores throughout the day and has to take a nap every day. (*Id.*) She was diagnosed with a degenerative disc disease in her twenties. (*Id.*) Lifting a heavy dog is painful. (*Id.*) She has to stop for a minute and sit down to stop the pain. (*Id.*)

Plaintiff takes around fifteen or twenty minutes to do the dishes, and then she sits down. (Tr. 63.) She sits down for fifteen minutes after moving a dog at work. (*Id.*) She has weaker grip strength and drops her equipment more than she has ever done in her life. (Tr. 63-64.) Sometimes she does not have the strength to cut dog toenails. (Tr. 64.) She drops things all day long. (*Id.*) She had her colon removed, which removed her diverticulitis. (*Id.*)

A vocational expert (VE) testified to the following. An individual with plaintiff's age, education, and work experience, would be able to perform her past work as a dog groomer as it is described by the Dictionary of Occupational Titles (DOT), but not as plaintiff described her position. (Tr. 67.) An individual who takes additional breaks throughout the day would be off task twenty percent of the time, and that individual could not maintain competitive employment. (*Id.*)

### III.  DECISION OF THE ALJ

On August 24, 2020, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 7-21.) At Step One, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 1, 2012, the alleged onset date. (Tr. 12.) At Step

Two, the ALJ found that plaintiff had the severe impairments of hypertension, obesity, emphysema, and chronic fatigue. (Tr. 14.) At Step Three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15.)

At Step Four, the ALJ determined that plaintiff had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. 416.967(c) with the following limitations: she could not have concentrated exposure to pulmonary irritants, temperature extremes, or extreme humidity. (Tr. 16.) The ALJ found that plaintiff could lift, carry, push, and pull up to 50 pounds occasionally, and 25 pounds frequently, stand, walk, and sit up to six hours in an eight-hour workday." (*Id.*) The ALJ found at Step Four that plaintiff was able to perform past relevant work as a dog groomer, as that is generally performed in the national economy, according to the DOT. (Tr. 19.)

Accordingly, the ALJ concluded that plaintiff has not been disabled under the Social Security Act. (Tr. 20.)

## IV. GENERAL LEGAL PRINCIPLES

The Court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id*. In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Id*. As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 1382c(a)(3)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Pate-Fires*, 564 F.3d at 942 (describing the five-step process).

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3) her disability meets or equals a listed, presumptively disabling, impairment. 20 C.F.R. §§ 404.1520(a)(4)(i)-(iii), 416.920(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant has the RFC to perform her past relevant work (PRW). *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant bears the burden of demonstrating she is no longer able to return to her PRW. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V.  DISCUSSION

Plaintiff's primary argument on appeal is that the ALJ failed to support his assessment of the impact of her severe impairment of chronic fatigue on her functional ability. (Doc. 19 at 2.) Plaintiff first argues that the ALJ failed to properly assess her allegations related to her chronic fatigue. (*Id.*) She noted that fatigue was her biggest problem. (Tr. 60.) She stated that she could not work full time because she did not have energy and strength. (*Id.*)

The ALJ noted that although plaintiff was diagnosed with chronic fatigue syndrome, the record indicated it was not disabling. (Tr. 18.) She had recently reported that she was

doing well at a doctor's visit, and did not report a lack of energy or strength. (Tr. 278-79.) The ALJ considered that plaintiff's primary care provider ordered laboratory tests to support her disability claim in July 2019, although plaintiff said she was feeling good at that particular visit. (*Id.*) The ALJ also noted that plaintiff exhibited normal and symmetrical strength in September 2019 and had no complaints at her doctor's appointment in February 2020. (Tr. 18, 288, 374). *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). The evidence did not suggest that plaintiff received treatment or medication for chronic fatigue. (Tr. 18.) *See* 20 C.F.R. §§ 404.1529(c)(3)(iv) & (v), 416.929(c)(3)(iv) & (v). Plaintiff's failure to seek medical treatment for her chronic fatigue for a prolonged period of time, despite seeking treatments for other medical conditions in the same time period, undermines her allegation of disabling conditions and chronic fatigue being her biggest issue. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (noting claimant's failure to seek medical treatment for long periods of time contradicted her assertion of disability and affirming the ALJ's decision to deny disability benefits).

Additionally, the ALJ considered plaintiff's daily activities to evaluate the impairment of her chronic fatigue. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i). The ALJ noted that plaintiff worked on Mondays and Tuesdays, went to the grocery store, and napped. (Tr. 17, 62.) He considered that plaintiff sat for fifteen minutes between work activities and chores. (Tr. 17, 63.) The ALJ concluded plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with objective evidence in the record. (Tr. 17.) Substantial evidence in the record indicates that plaintiff's chronic fatigue was not disabling. The ALJ gave adequate explanations to support his assessment of plaintiff's chronic fatigue. Thus, the ALJ properly considered plaintiff's symptoms with respect to the impact of her chronic fatigue. *See* 20 C.F.R. §§ 404.1529, 416.929.

Plaintiff next contends that the ALJ failed to identify what type of evidence he believed would be sufficient to support the reported limitations of her chronic fatigue. (Doc. 19 at 3.) It is improper to shift the burden of proof to the ALJ at this stage because plaintiff "bears the burden of proving disability and providing medical evidence as to the

existence and severity of an impairment." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013); 20 C.F.R. §§ 404.1512, 416.912.  Plaintiff must provide medical findings equal in severity to all of a listing's specified criteria in order to meet the burden of proof. *Johnson v. Barnhart*, 309 F.3d 1067, 1070 (8th Cir. 2004).  The burden rests on plaintiff until she proves that she is unable to perform her PRW.  *See e.g., Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010).

      Plaintiff also argues that the ALJ failed to consider her limited ability to seek treatment due to her lack of medical insurance. (Doc. 19 at 4.)  The ALJ noted that plaintiff lacked health insurance when considering her testimony. (Tr. 17.)  Plaintiff's assertion that her barrier to seeking treatment for chronic fatigue was her lack of medical insurance is unpersuasive.  The record shows that she sought treatment on multiple occasions after her applications for benefits for various other reasons, including follow up on COPD, depression, lower abdominal pain, colonoscopy, elective laparoscopic sigmoid colon resection, checkup, and medication refills. (Tr. 278, 282, 284-86, 288, 296, 326-28, 355-56.)  When plaintiff had a follow-up on COPD in July 2019, she said her lawyer needed laboratory tests for her chronic fatigue to support her disability claim, despite reporting feeling good at that particular doctor's visit. (Tr. 278-79.)  When plaintiff had an elective laparoscopic sigmoid colon resection in November 2019, her physical exam showed normal range of motion. (Tr. 295.)  When plaintiff had a checkup and medication refills in February 2020, she had no complaints and denied fatigue at the appointment. (Tr. 288-89.)  Additionally, plaintiff testified that the hospital covered a hundred percent of the surgery cost of removing her colon due to her financial conditions. (Tr. 62.)  Because plaintiff did not have evidence that she was unable to obtain medical treatment for her chronic fatigue, her lack of medical insurance could not justify her failure to seek treatment. *See e.g.*, *Whitman v. Colvin*, 762 F.3d 701, 706-07 (8th Cir. 2014) (holding that the ALJ properly considered claimant's lack of medical treatment as relevant despite claimant's assertion that his failure to seek consistent treatment was due to a lack of insurance, when claimant did not establish a good reason for not seeking medical treatment); *Goff v.*

*Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005); *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992).

Plaintiff further contends that the ALJ failed to explain how the cited activities were inconsistent with her allegations of fatigue. (Doc. 19 at 4.) The ALJ noted that plaintiff's daily activities included working on two consecutive days, shopping, and doing chores. (Tr. 17.) His finding was proper because plaintiff's daily activities, when considered with other objective evidence in the record—including the medical evidence, were inconsistent with her testimony regarding the severity of her chronic fatigue. *See e.g.*, *Edwards v. Barnhart*, 314 F.3d 964, 966-67 (8th Cir. 2003) (noting that the medical records and claimant's daily activities such as shopping, driving short distances, going to church, and visiting relatives suggest that claimant had a greater physical capacity than claimed); *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997) (finding that the medical evidence and claimant's daily activities, including dressing and bathing herself, doing some housework, cooking, and shopping, contradict her statement about the severity of her pain and disability).

Plaintiff argues that the ALJ failed to properly consider the impact of her chronic fatigue when assessing her RFC. (Doc. 19 at 5-7.) Plaintiff's argument is unavailing because the ALJ specifically considered plaintiff's chronic fatigue when formulating her RFC. (Tr. 18.) The ALJ noted that although plaintiff had been diagnosed with chronic fatigue, she reported that she was doing well and was not getting medication or treatment for her chronic fatigue. (*Id*.) The ALJ properly considered all of plaintiff's limitations that he found credible and included those limitations when formulating plaintiff's RFC. (*Id*.) *See Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.") (internal quotations and citations omitted).

Plaintiff contends that the ALJ did not have sufficient evidence to assess the impact of her chronic fatigue and needed to order a consultative examination. (Doc. 19 at 7.) "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence

so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Kamann*, 721 F.3d at 950 (quoting *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994)). The evidence in the record provided a sufficient basis for the ALJ to make his determination. As discussed above, substantial evidence supported the ALJ's decision that plaintiff's allegations regarding the intensity, persistence, and limiting effects of her chronic fatigue were inconsistent with the medical evidence and other evidence in the record. The record does not suggest that the Court should question the ALJ's finding. *See Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) ("This court will not substitute its opinion for the ALJ's, who is in a better position to gauge credibility and resolve conflicts in evidence.")

Lastly, plaintiff argues that the ALJ failed to indicate the limitations he considered as a result of her fatigue. (Doc. 19 at 7.) Plaintiff further contends that the hypothetical question to the VE did not accurately reflect plaintiff's limitations. (*Id*.) "A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1015 (8th Cir. 2000)). The hypothetical situation properly reflected plaintiff's RFC as found by the ALJ. Furthermore, the hypothetical did indicate some limitations based on fatigue, such as plaintiff could only stand, walk, and sit for six hours in an eight-hour day. (Tr. 66.)

In the present case, the ALJ concluded, based on substantial evidence, that plaintiff was not disabled and that she had the RFC to perform medium work.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

/s/ David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on March 14, 2022.